NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACOB V., <br><br>     Plaintiff, <br><br>     v. <br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br>     Defendant. | Civil Action No. 23-22061 (MAS) <br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Jacob V.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for child's insurance benefits ("CIB") under Title II of the Social Security Act (the "Act") and supplemental security income benefits ("SSI") under Title XVI of the Act. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review this appeal and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Commissioner is affirmed.

**I. BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that the Plaintiff is not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A. **Procedural History**[2]

On December 2, 2020, Plaintiff filed two applications for CIB alleging disability beginning September 1, 2004.[3] (AR 250-56, 368.) On June 4, 2021, Plaintiff also filed an application for SSI alleging disability beginning September 1, 2004. (*Id.* at 36.) Plaintiff's applications were denied both initially and on reconsideration. (*Id.* at 125-46.) Thereafter, Plaintiff submitted a disability appeal and requested a hearing before an ALJ. (*Id.* at 170-84.) On June 1, 2022, the ALJ held a telephone hearing with the parties—including Plaintiff's mother—and an impartial vocational expert. (*Id.* at 43-83, 154-69.) Both Plaintiff and his mother testified at the hearing. (*Id.* at 43-83.) Following the hearing, the ALJ issued a decision on June 22, 2022, denying both Plaintiff's CIB and SSI applications because Plaintiff was "not disabled under . . . [the] Act." (*Id.* at 13-42.) Plaintiff appealed that decision. (*Id.* at 8-12.)

On September 12, 2023, the Social Security Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) Plaintiff then filed an appeal to this Court. (*See generally* Compl., ECF No. 1.) On April 5, 2024, Plaintiff filed his moving brief (Pl.'s Moving Br., ECF No. 7), and the Commissioner opposed (Def.'s Reply Br., ECF No. 11). Plaintiff did not file a reply brief.

B. **The ALJ's Decision**

The ALJ, in a written decision, determined that Plaintiff was not disabled under the prevailing administrative regulations during the relevant time period. (AR 36.) To begin, the ALJ

---

[2] The Administrative Record ("AR") is located at ECF No. 4. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] "As required by section 202(d) of the Social Security Act, to be entitled to child's insurance benefits, the claimant must have a disability that began before attainment of age 22." (AR 17.) The ALJ acknowledged that "[t]he applications were filed based on the work records of both the claimant's parents, whose names and Social Security numbers are reflected in the caption." (*Id.* at 16.)

2

set forth the Social Security Administration's five-step process for determining whether an individual is disabled. (*Id.* at 17-19.) The ALJ first noted that Plaintiff had not attained age 22 as of September 1, 2004, the alleged onset date. (*Id.* at 20.) Then, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2004, the alleged onset date [for his disability]." (*Id.*) At step two, the ALJ found that Plaintiff had several severe impairments during the relevant time period: (1) schizoaffective disorder; (2) generalized anxiety disorder; (3) attention deficit hyperactivity disorder ("ADHD"); (4) primary biliary cholangitis; (5) autoimmune hepatitis; and (6) obesity. (*Id.*)

Despite Plaintiff's several severe impairments, the ALJ determined at step three that Plaintiff's impairments did not meet or medically equate to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) In making her determination, the ALJ considered Plaintiff's obesity and "any additional and cumulative effects" it may have on other body systems. (*Id.* at 20-21.) The ALJ noted that the combined effects of Plaintiff's obesity and his other impairments were accounted for in Plaintiff's residual functional capacity ("RFC"). (*Id.*) The ALJ then considered the record and determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 C[.]F[.]R[.] [§§] 404.1567(b) and 416.967(b) except simple, routine tasks with only simple decision making, and only occasional changes in the workplace. Further, while the claimant can engage in occasional interaction with co-workers and supervisors, he cannot engage in direct public interaction.

(*Id.* at 22.) The ALJ indicated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," medical opinions, prior administrative medical findings, and function reports. (*Id.*)

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 34.) At step five, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and [RFC],

3

there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*) The ALJ acknowledged that Plaintiff's "ability to perform all or substantially all the requirements of this level of work has been impeded by additional limitations" and thus relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been able to perform representative occupations such as: (1) "Routing Clerk (Sorter)"; (2) "Page (Runner, Shelver, Shelving Clerk, Stack Clerk)"; and (3) "Postage Machine Operator (Sealing-and-Canceling-Machine Operator)." (*Id.* at 35.)

At step five, the ALJ determined that Plaintiff was not disabled, as defined under the Act, from September 1, 2004 (the alleged onset date) until the date of the decision (June 22, 2022). (*Id.*)

## II.   **LEGAL STANDARD**

### A.   **Standard of Review**

On appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (quoting 42 U.S.C. § 405(g)). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence, however, "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication

of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citation omitted)). The ALJ must state both the evidence considered as well as the evidence rejected. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (citation omitted)).

### B. Establishing Eligibility for CIB and SSI

To be eligible for CIB[4] or SSI benefits under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [she is] not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

---

[4] CIB falls under Title II of the Act. And the same definition of disability that applies to disability insurance benefits applies to CIB. *See* 20 C.F.R. § 404.1505(a) ("We will use this definition of disability if you are applying for a period of disability, or disability insurance benefits as a disabled worker, or child's insurance benefits based on disability before age 22 . . . ."). Further, the same rules, including the same five-step sequential evaluation process, that apply to disability insurance benefits apply to CIB. *See* 20 C.F.R. § 404.1520(a)(2) ("These rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability.").

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled for purposes of CIB and SSI. *See* 20 C.F.R. § 404.1520(a)(4); *see also Bruner v. Astrue*, No. 4:11-1359, 2012 WL 5398635, at *4 (M.D. Pa. Nov. 5, 2012) ("In determining whether an applicant for adult child disability benefits and SSI benefits satisfies the definition of disability, the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4) is used."). For the first step, the claimant must establish that he has not engaged in any substantial gainful activity since the onset of his alleged disabilities. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that his impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and entitled to social security income benefits. *Id.* If he cannot so demonstrate, the eligibility analysis proceeds to step four.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. 416.920(e). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.920(e), § 416.945(a)(2). Then, at step four, the ALJ determines whether the claimant's RFC permits him to resume previous employment. *Id.* § 404.1520(a)(4)(iv). If the claimant's RFC permits other employment, the claimant is not "disabled" and thus not entitled to SSI benefits. *Id.* If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(f). Importantly, the burden of persuasion rests with the claimant in the first four steps of analysis. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner cannot satisfy this burden, the claimant will receive SSI benefits. *Id.* § 404.1520(g).

## III.    DISCUSSION

Plaintiff alleges that the ALJ erred in her decision denying CIB and SSI because she failed to account for the moderate limitation in maintaining concentration, persistence, and pace. (Pl.'s Moving Br. 10.) In doing so, Plaintiff makes several arguments. The Court considers the arguments in turn and finds each unpersuasive.

### A.    RFC Determination

Plaintiff first argues that the ALJ—despite finding that Plaintiff has a "residual moderate degree of limitation" in concentrating, persisting, or maintaining pace[5]—did not account for such limitations in Plaintiff's RFC determination. (*Id.* at 10-13.) Plaintiff also argues that the ALJ's "simple tasks" limitation finding was improper because the ALJ did not offer any valid explanation for it. (*Id.* at 11-12.) The Court is unpersuaded by both assertions.

---

[5] The ALJ determined that:

> [r]egarding concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. Mental status examinations show a varying degree of concentration during the entire relevant period as discussed later in this decision (*see* Exhibits 2F, 5F, 8F, 13F, 17F, and 18F). This is somewhat consistent with the claimant's oral and written presentations, although not to the extent alleged (*see* Exhibits 5E, 6E, 17/18E; Hearing Recording). Viewing the evidence in a light most favorable to the claimant, the undersigned finds a residual moderate degree of limitation in this area.

(AR 21.)

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546(c); *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "In making a[n] [RFC] determination, the ALJ must consider all evidence before [her]," and, although the ALJ may weigh the credibility of the evidence, [s]he must "give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. As part of an RFC analysis, an ALJ must determine the intensity, persistence, and limiting effects of an individual's symptoms. 20 C.F.R. § 404.1529(c). In making this assessment, the ALJ must examine the entire case record, including the "objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). The ALJ will additionally consider daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). The ALJ will also examine inconsistencies between the claimant's statements and the evidence presented. *Id.*

Here, the Court finds that the ALJ accounted for Plaintiff's residual moderate limitation in concentration, persistence, and pace in rendering Plaintiff's RFC. In assessing Plaintiff's RFC, the

ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (*See* AR 22-34.) In fact, the ALJ formulated Plaintiff's RFC based on all relevant evidence, including the medical records and subjective[6] complaints. (*See id.*) In doing so, the ALJ summarized at length the same exhibits that she considered in determining that Plaintiff had "a varying degree of concentration during the entire relevant period."[7] (*Compare id.* at 21-22, *with id.* at 24-34 (citing Exs. 5E, 17/28E, 2F, 5F, 8F, 13F-18F).)

The ALJ also considered the medical source opinions and explained the weight allocated to those opinions. (*See id.* at 22-34.) For instance, when crafting Plaintiff's RFC, the ALJ explained that state agency psychologists' opinions that Plaintiff "could perform simple, unskilled tasks, with limited public contact" were persuasive because "they [were] consistent with and supported by the evidence" in the record. (*Id.* at 32-33 ("[Plaintiff's] routine and conservative treatment yielded significant improvement in the [Plaintiff's] symptomatology consistent with the performance of simple, routine tasks with only occasional decision making and occasional contact with co-workers and supervisors, and no direct public contact.").)[8] Further, the ALJ considered that Plaintiff's

---

[6] The ALJ considered that Plaintiff often complained of "distractibility," "poor ability to give close attention to detail, difficulty sustaining instructions, difficulty organizing tasks/activities, and being easily distracted by extraneous stimuli," among others. (AR 24, 27.)

[7] The ALJ's consideration of Plaintiff's mental impairments also included an evaluation of the "paragraph B" and "paragraph C" criteria. (AR 21-22.)

[8] The ALJ, on the other hand, explained that the testimony of Plaintiff's mother and a parallel Third-Party Function Report were unpersuasive because "[t]here is no indication in the record that [Plaintiff's mother] is a medical professional and as [a] layperson, she is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to the claimant's ability to work or the side effects of medications." (AR 33.) The ALJ added that "the [Third-Party Function Report] is not fully supported by or consistent with the clinical or diagnostic medical evidence . . . ." (*Id.*); *see Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (citing *Cotter*, 642 F.2d at 705) ("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another.").

former psychiatrist, David Holbrook, M.D., "switched" Plaintiff's medication to Adderall, "which improved [his ability to] focus . . . ." (*Id.* at 24 (citing Ex. 5F).) In turn, after considering the relevant evidence, the ALJ determined that Plaintiff could perform light work except "simple, routine tasks with only simple decision making, and only occasional changes in the workplace" with no "direct public interaction" and only "occasional interaction with co-workers and supervisors."[9] (*Id.* at 22.)

Plaintiff's next argument, that the ALJ did not provide a "valid explanation" for Plaintiff's "simple tasks" limitation, is also unavailing. Indeed, the Third Circuit holds that a "simple tasks" limitation is warranted when a claimant has moderate difficulties in "concentration, persistence, or pace" if the ALJ offers a valid explanation for it. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 213 (3d Cir. 2019) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004) (explaining that a "simple tasks' limitation does not account for the *extent* of a claimant's difficulties in concentration, persistence, or pace)). Here, as described above, the Court finds that the ALJ set forth a "valid explanation" as to the extent of Plaintiff's difficulties after carefully considering Plaintiff's record at length and evaluating the persuasiveness of the multitude of medical sources that were submitted for review. (*See* AR 22-31); *see Hess*, 931 F.3d at 213 (finding that the ALJ offered a valid explanation because "the ALJ explained at length and with sound reasoning why

---

[9] After examining Plaintiff's statements and the evidence presented, the ALJ ultimately concluded that "the intensity, persistence[,] and limiting effects of [Plaintiff's alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 32.)

[claimant's] 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that the [claimant] was incapable of performing 'simple tasks'").[10]

Under these circumstances, the Court finds that the ALJ's RFC finding is supported by substantial evidence and that the ALJ provided a sufficient explanation for the RFC determination. As such, the Court finds no reason to disturb the ALJ's RFC finding.

B.   **Hypothetical Question and Vocational Expert's Testimony**

Plaintiff argues next that because the RFC finding was in error, the vocational expert's testimony that Plaintiff could perform the jobs identified by the ALJ at step five was also not supported by substantial evidence. (Pl.'s Moving Br. 13-14.) Specifically, Plaintiff argues that the hypothetical question posed to the vocational expert did not account for "Plaintiff's limitations in maintaining concentration, persistence, and pace." (*Id.* at 14.)

The Third Circuit has held that hypotheticals posed to the vocational expert must "accurately portray" the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record." *Rutherford*, 399 F.3d at 554. "[G]reat specificity is required when an ALJ incorporates a claimant's mental or physical limitations into a

---

[10] Furthermore, a "[p]laintiff bears the burden of proof at the point of RFC determination[.]" *Diaz v. Astrue*, No. 07-3220, 2008 WL 4104564, at *6 (D.N.J. Sept. 3, 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). A plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed...." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (citing *Shinseki*, 556 U.S. at 409) (rejecting plaintiff's argument that ALJ erred at step three because plaintiff "never explain[ed] how, even if the ALJ's analysis was lacking, the deficiency was harmful" and because plaintiff "ha[d] not affirmatively pointed to specific evidence that demonstrates he should succeed"). "Gesturing in the direction of remand will not do." *Vanessa T-H.*, 2024 WL 1635685, at *6. To note, Plaintiff fails to satisfy his burden of persuasion because he does not affirmatively point to evidence in the record that the ALJ should have considered and instead vaguely argues that the ALJ omitted relevant considerations. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016); *Morris v. Comm'r of Soc. Sec.*, No. 19-8473, 2020 WL 6580778, at *4 (D.N.J. Nov. 10, 2020).

hypothetical." *Ramirez*, 372 F.3d at 554-55 (citing *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)).

Here, the Court has already concluded that Plaintiff's RFC finding was supported by substantial evidence and that the ALJ provided a sufficient explanation. The Court also finds that the ALJ provided an accurate and detailed portrayal of Plaintiff's impairments—including his limitations in concentration, persistence, and pace—for the vocational expert. In examining the vocational expert, the ALJ asked whether a hypothetical individual who is limited to "a full range of light exertion level work; . . . only being able to perform unskilled . . . jobs involving only simple, routine tasks, making simple decisions, tolerating occasional changes in the workplace; occasional[ly] interact[ing] with coworkers and supervisors[;] and [having] no direct public interaction" could perform any jobs. (AR 78.) Based on the hypotheticals, the vocational expert provided that the following jobs would be available: (1) Routing Clerk; (2) Shelving Clerk; and (3) Postage Machine Operator. (*Id.*)[11]

While some courts have raised concerns that hypothetical questioning might not be sufficiently specific, the Court finds that the ALJ's questions do not raise those concerns. *Compare Burns*, 312 F.3d at 122 (finding that one question merely referring to "simple repetitive one, two-step tasks" failed to incorporate plaintiff's borderline intellectual functioning and was thus deficient), *with Menkes v. Astrue*, 262 F. App'x 410, 412-13. (3d Cir. 2008) (finding "no error in the hypothetical question or in the ALJ's conclusion" because "[h]aving previously acknowledged

---

[11] The ALJ further added to the hypothetical and asked if the same individual would be able to maintain work if the individual: (1) "would end up being off task an[d] unproductive 15 to 20 [percent] of the day as a result of frequent lapses in focus and concentration;" (2) "miss[ed] work two to three days per month on a regular basis;" or (3) missed work on consecutive or sporadic days. (AR 78-79.) The vocational expert answered that an individual with such limitations would not be able to maintain work. (*Id.*)

that [plaintiff] suffered moderate limitations in concentration, persistence and pace, the ALJ . . . accounted for these mental limitations in the hypothetical question by restricting the type of work to "simple routine tasks.").

For the reasons outlined above, the Court finds that the ALJ's hypothetical questions posed to the vocational expert were sufficient. As such, the Court declines to remand on this basis.

## IV.    CONCLUSION

For the above reasons, the Court affirms the Commissioner's decision. An Order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE